## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE**, | ) |
| 30 N. Raymond Avenue | ) |
| Pasadena, California 91103, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| **PAMELA Q. HARRIS**, in her official capacity as | ) |
| the State Court Administrator of the | ) |
| **Administrative Office of the Courts of Maryland**, | ) **Case No.** |
| Maryland Judicial Center | ) |
| 187 Harry S. Truman Parkway | ) |
| Annapolis, Maryland 21401, | ) |
| | ) |
| **DAWNE D. LINDSEY**, in her official capacity as | ) |
| **Clerk of Circuit Court for Allegany County,** | ) |
| 30 Washington Street | ) |
| Cumberland, Maryland 21502, | ) |
| | ) |
| **SCOTT POYER**, in his official capacity as Clerk | ) |
| **of Circuit Court for Anne Arundel County,** | ) |
| 8 Church Circle | ) |
| Annapolis, Maryland 21401, | ) |
| | ) |
| **JULIE ENSOR**, in her official capacity as Clerk of | ) |
| **Circuit Court for Baltimore County,** | ) |
| 401 Bosley Avenue 2nd Floor | ) |
| Towson, Maryland 21204, | ) |
| | ) |
| **KATHY P. SMITH**, in her official capacity as | ) |
| **Clerk of Circuit Court for Calvert County,** | ) |
| 175 Main Street | ) |
| Prince Frederick, Maryland 20678, | ) |
| | ) |
| **TERRY LORD**, in her official capacity as Clerk of | ) |
| **Circuit Court for Caroline County,** | ) |
| 109 Market Street | ) |
| Denton, Maryland 21629, | ) |
| | ) |
| | ) |
| | ) |

**HEATHER S. DeWEES, in her official capacity as**
**Clerk of Circuit Court for Carroll County,**
55 North Court Street
Westminster, Maryland 21157,

**CHARLENE NOTARCOLA, in her official**
**capacity as Clerk of Circuit Court for Cecil**
**County,**
129 East Main Street
Elkton, Maryland 21921,

**SHARON L. HANCOCK, in her official capacity**
**as Clerk of Circuit Court for Charles County,**
200 Charles Street
La Plata, Maryland 20646,

**AMY J. CRAIG, in her official capacity as Clerk**
**of Circuit Court for Dorchester County,**
206 High Street
Cambridge, Maryland 21613,

**SANDRA K. DALTON, in her official capacity as**
**Clerk of Circuit Court for Frederick County,**
100 West Patrick Street
Frederick, Maryland 21701,

**KERRY GIBSON, in her official capacity as Clerk**
**of Circuit Court for Garrett County,**
203 South 4th Street Room 109
Oakland, Maryland 21550,

**JAMES REILLY, in his official capacity as Clerk**
**of Circuit Court for Harford County,**
20 West Courtland Street
Bel Air, Maryland 21014,

**WAYNE A. ROBEY, in his official capacity as**
**Clerk of Circuit Court for Howard County,**
9250 Judicial Way
Ellicott City, Maryland 21043,

**SHERISE L. KENNARD, in her official capacity**
**as Clerk of Circuit Court for Kent County,**
103 North Cross Street
Chestertown, Maryland 21620,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**KAREN A. BUSHELL, in her official capacity as**
**Clerk of Circuit Court for Montgomery County,**
50 Maryland Avenue
Rockville, Maryland 20850,

**KATHERINE B. HAGER, in her official capacity**
**as Clerk of Circuit Court for Queen Anne's**
**County,**
200 North Commerce Street
Centreville, Maryland 21617,

**CHARLES HORNER, in his official capacity as**
**Clerk of Circuit Court for Somerset County,**
30512 Prince William Street
Princess Anne, Maryland 21853,

**DEBRA J. BURCH, in her official capacity as**
**Clerk of Circuit Court for St. Mary's County,**
41605 Courthouse Drive
Leonardtown, Maryland 20650,

**KATHI DULIN DUVALL, in her official capacity**
**as Clerk of Circuit Court for Talbot County,**
11 North Washington Street
Easton, Maryland 21601,

**KEVIN TUCKER, in his official capacity as Clerk**
**of Circuit Court for Washington County**
24 Summit Avenue,
Hagerstown, Maryland 21740

**JAMES B. McALLISTER, in his official capacity**
**as Clerk of Circuit Court for Wicomico County,**
101 North Division Street Room 105
Salisbury, Maryland 21801

**SUSAN BRANIECKI, in her official capacity as**
**Clerk of Circuit Court for Worcester County,**
One West Market Street Room 104
Snow Hill, Maryland 21863,

      Defendants

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Courthouse News Service ("CNS"), by and through its undersigned counsel, alleges the following in support of its Complaint for Injunctive and Declaratory Relief against defendants Pamela Q. Harris, in her official capacity as the State Court Administrator of the Administrative Office of the Courts of Maryland (the "State Court Administrator"); Dawne D. Lindsey, in her official capacity as Clerk of Circuit Court for Allegany County; Scott Poyer, in his official capacity as Clerk of Circuit Court for Anne Arundel County; Julie Ensor, in her official capacity as Clerk of Circuit Court for Baltimore County; Kathy P. Smith, in her official capacity as Clerk of Circuit Court for Calvert County; Terry Lord, in her official capacity as Clerk of Circuit Court for Caroline County; Heather S. DeWees, in her official capacity as Clerk of Circuit Court for Carroll County; Charlene Notarcola, in her official capacity as Clerk of Circuit Court for Cecil County; Sharon L. Hancock, in her official capacity as Clerk of Circuit Court for Charles County; Amy J. Craig, in her official capacity as Clerk of Circuit Court for Dorchester County; Sandra K. Dalton, in her official capacity as Clerk of Circuit Court for Frederick County; Kerry Gibson, in her official capacity as Clerk of Circuit Court for Garrett County; James Reilly, in his official capacity as Clerk of Circuit Court for Harford County; Wayne A. Robey, in his official capacity as Clerk of Circuit Court for Howard County; Sherise L. Kennard, in her official capacity as Clerk of Circuit Court for Kent County; Karen A. Bushell, in her official capacity as Clerk of Circuit Court for Montgomery County; Katherine B. Hager, in her official capacity as Clerk of Circuit Court for Queen Anne's County; Charles Horner, in his official capacity as Clerk of Circuit Court for Somerset County; Debra J. Burch, in her official capacity as Clerk of Circuit Court for St. Mary's County; Kathi Dulin Duvall, in her official capacity as Clerk of Circuit Court for Talbot County; Kevin Tucker, in his official capacity as

Clerk of Circuit Court for Washington County; James B. McAllister, in his official capacity as

Clerk of Circuit Court for Wicomico County; and Susan Braniecki, in her official capacity as

Clerk of Circuit Court for Worcester County (together with the State Court Administrator,

"Defendants"):

INTRODUCTION

1.      This case seeks to address Defendants' policy and practice of blocking access to

newly electronically filed civil complaints until Defendants have completed docketing of those

complaints, in violation of the First Amendment right of access.  This restriction is not justified

by an overriding or significant interest and does not employ the least restrictive alternative.

2.      Since time beyond memory, the press has reviewed new civil complaints minutes

after they crossed the intake counter on the day of filing prior to docketing in courts across the

country.  Journalists reviewed the new complaints as part of their work on the courthouse beat,

because they often contained news of disputes and controversies with local and national import.

That news was reported as soon as the complaints were received, because, like fresh bread, news

grows stale quickly.

3.      Most federal courts and many state courts have taken the opportunity of the shift

away from paper filing during the modern era of electronic filing of new complaints and other

litigation documents to continue this tradition of providing access upon receipt.  However, some

state courts, including the Maryland Circuit Courts named herein, instead push the press and

public behind the clerical process of docketing (now often called processing), giving rise to

unconstitutional delays in access.

4.      The Fourth Circuit, as well as other federal circuit and district courts, have held

that the First Amendment provides the press and public with a presumptive right of access to

newly filed civil complaints contemporaneous with the filing of the complaint.  *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021).  And where this First Amendment right of access applies, it "requires courts to make newly filed civil complaints available as expeditiously as possible."  *Id.* at 328-29.

5.      In the context of an e-filing court, like those of Defendants, where electronic software takes the place of the intake clerk, "as expeditiously as possible" requires access to non-confidential newly filed civil complaints upon receipt on the day they are filed and prior to clerical review or docketing.

6.      Grounded in the right of free expression, contemporaneous access to newly filed civil complaints is essential to accurate and fair news reporting of civil court actions before they become yesterday's news and is thus vital to the public's ability to be aware of and discuss what is occurring in the judiciary on a contemporaneous basis.  *See Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014).  Thus, when a complaint is withheld, it leaves the public unaware that a claim has been asserted and that the State's power has been invoked – and public resources spent – in an effort to address the dispute.

7.      In the Maryland Circuit Courts, 22 out of 24 of those courts mandate electronic filing through the Maryland Electronic Courts ("MDEC") system, but despite a conversion from paper filing that began in October 2014, newly filed non-confidential civil complaints are not made available to the press and public in a contemporaneous manner.  Instead, Defendants – state and county clerks responsible for the administration of court records in the 22 circuit courts that use the MDEC system and implementing the policies and practices challenged in this action – withhold access to non-confidential civil complaints after filing, while they sit in electronic

queues, sometimes for days, waiting to be reviewed, docketed, and accepted before being made public.

8.      On information and belief, Defendants rely on Maryland Rule of Procedure 16-904(b) to justify their policies and practices of withholding access to newly filed non-confidential civil complaints until after clerical review and docketing.  Rule 16-904(b), in relevant part, states that "a clerk is not required to permit public inspection of a case record filed with the clerk for docketing in a judicial action…until the document has been docketed…."  The Rule, however, does not *mandate* that court staff withhold access to newly filed civil complaints until those filings are reviewed and docketed, and to the extent Rule 16-904(b) purports to require Defendants to restrict access to newly e-filed complaints, the requirements of the First Amendment trump the rule.  There is no significant interest sufficient to justify Defendants' practice of withholding complaints until after clerical review and docketing and, even if there were, Defendants' conduct is not narrowly tailored because there are less restrictive alternatives available.

9.      As will be established at trial, since the implementation of electronic filing in the Maryland Circuit Courts, Defendants cumulatively have made on average little more than 44% of newly filed complaints available on the day of filing, with the averages in many Circuit Courts well below that figure and with many complaints withheld by Defendants for two or more days after filing.  As the Fourth Circuit explained in *Doe v. Public Citizen*, "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment."  749 F.3d at 272.

10.      Not only do these delays resulting from Defendants' access restrictions – experienced by CNS, other press entities, and the general public – violate the First Amendment, they are also easily avoidable, as demonstrated by courts across the country, including the vast

majority of federal district courts and many state courts, that utilize electronic filing of civil complaints and provide access upon receipt.  Defendants can but have declined to do so here.

11.     Similar "no access before processing" policies have been deemed unconstitutional in violation of the First Amendment, as federal courts across the nation have overturned clerk practices that withheld access to newly filed complaints for even a short time while they were being processed into a court's docket because such conduct fails constitutional scrutiny.  *See Courthouse News Serv. v. Schaefer*, 440 F.Supp.3d 532, 561 (E.D. Va. 2020), *aff'd* 2 F.4th 318 (4th Cir. 2021); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 596-97 (9th Cir. 2020) and, on remand, Amd. Judgment, 2021 WL 1605216, at *1 (C.D. Cal. Jan. 26, 2021); *Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *17-18 (D. Vt. Nov. 19, 2021); *Courthouse News Serv. v. Brown*, 2018 WL 318485 at *6 (N.D. Ill. Jan. 8, 2018), *rev'd on other grounds*, 908 F.3d 1063 (7th Cir. 2018); *Courthouse News Serv. v. Tingling*, No. 1:16-cv-08742-ER, 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016); *Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) and, Final Judgment, 2010 WL 11546125, at *1 (Mar. 2, 2010).

12.     Accordingly, CNS seeks declaratory and injunctive relief requiring Defendants to provide contemporaneous access to newly e-filed civil complaints prior to clerical processing and prohibiting Defendants, as well as any employees or others acting at their behest, from (i) denying press and public access to newly e-filed complaints until after they have been reviewed, docketed, and approved by court staff and (ii) applying Maryland Rule of Procedure 16-904(b) in a manner that deprives CNS of its First Amendment right of access to newly filed civil complaints.

JURISDICTION AND VENUE

13.     CNS' claims arise under the First and Fourteenth Amendments to the United

States Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.*  This Court has

subject matter jurisdiction under 28 U.S.C. § 1331, because these are federal questions, and 28

U.S.C. § 1343, because these are civil rights claims.

14.     Defendants are subject to personal jurisdiction in this Court as of the time of filing

because, upon information and belief, Defendants are individuals who reside in Maryland.

15.     Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b),

because a substantial part of the events giving rise to the Complaint occurred in this District, all

Defendants act in their official capacities in this District, and, upon information and belief, all

Defendants reside in this District, and this District is also where their primary place of

employment is located.


PARTIES

16.     CNS is a California corporation with its principal place of business in Pasadena,

California.  A widely read legal news service with thousands of subscribers, including other

media outlets, across the nation, CNS specializes in reporting about civil lawsuits from the date

of filing through the appellate level in state and federal courts throughout the United States.

CNS' comprehensive and timely coverage of civil litigation through its print, website, and e-mail

publications has made it a go-to source of information about the nation's civil courts.

17.     Defendant Pamela Q. Harris is sued in her official capacity as State Court

Administrator of the Administrative Office of the Courts of Maryland.  The State Court

Administrator is responsible for, among other things, oversight of the administrative

infrastructure of the Maryland Judiciary, including trial court and appellate court administration

and the administration of the MDEC system.  Acting in her official capacity, Ms. Harris, as well as those acting under her direction and supervision, is directly involved with and responsible for implementing the policies and procedures that result in the withholding of access to newly filed complaints that the media and public experience in the Maryland Circuit Courts.  Ms. Harris' actions and the resulting delay and denial in access to newly filed complaints take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Harris resides and is employed in the State and District of Maryland.

18.     CNS also names as defendants the Circuit Court Clerks, in their official capacities, for the 22 counties of Maryland that mandate electronic filing through the MDEC system.  Maryland Circuit Courts are the trial courts that hear the majority of civil actions (excluding probate matters) in Maryland state courts.  Accordingly, Circuit Court Clerks are responsible for, among other things, the administration of civil court records and the provision of public access to those records.

19.     Defendant Dawne D. Lindsey is sued in her official capacity as Clerk of Circuit Court for Allegany County.  Acting in her official capacity, Ms. Lindsey, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Lindsey's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Lindsey resides and is employed in the State and District of Maryland.

20.     Defendant Scott Poyer is sued in his official capacity as Clerk of Circuit Court for Anne Arundel County.  Acting in his official capacity, Mr. Poyer, as well as those acting under his direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Mr. Poyer's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Mr. Poyer resides and is employed in the State and District of Maryland.

21.     Defendant Julie Ensor is sued in her official capacity as Clerk of Circuit Court for Baltimore County.  Acting in her official capacity, Ms. Ensor, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Ensor's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Ensor resides and is employed in the State and District of Maryland.

22.     Defendant Kathy P. Smith is sued in her official capacity as Clerk of Circuit Court for Calvert County.  Acting in her official capacity, Ms. Smith, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Smith's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42

U.S.C. § 1983.  On information and belief, Ms. Smith resides and is employed in the State and District of Maryland.

23.     Defendant Terry Lord is sued in her official capacity as Clerk of Circuit Court for Caroline County.  Acting in her official capacity, Ms. Lord, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Lord's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Lord resides and is employed in the State and District of Maryland.

24.     Defendant Heather S. DeWees is sued in her official capacity as Clerk of Circuit Court for Carroll County.  Acting in her official capacity, Ms. DeWees, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. DeWees' actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. DeWees resides and is employed in the State and District of Maryland.

25.     Defendant Charlene Notarcola is sued in her official capacity as Clerk of Circuit Court for Cecil County.  Acting in her official capacity, Ms. Notarcola, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Notarcola's actions and the resulting delay and denial in access take place under color of Maryland law and constitute

state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Notarcola resides and is employed in the State and District of Maryland.

26.     Defendant Sharon L. Hancock is sued in her official capacity as Clerk of Circuit Court for Charles County.  Acting in her official capacity, Ms. Hancock, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Hancock's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Hancock resides and is employed in the State and District of Maryland.

27.     Defendant Amy J. Craig is sued in her official capacity as Clerk of Circuit Court for Dorchester County.  Acting in her official capacity, Ms. Craig, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Craig's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Craig resides and is employed in the State and District of Maryland.

28.     Defendant Sandra K. Dalton is sued in her official capacity as Clerk of Circuit Court for Frederick County.  Acting in her official capacity, Ms. Dalton, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Dalton's actions and the

resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Dalton resides and is employed in the State and District of Maryland.

29.     Defendant Kerry Gibson is sued in her official capacity as Clerk of Circuit Court for Garrett County.  Acting in her official capacity, Ms. Gibson, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Gibson's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Gibson resides and is employed in the State and District of Maryland.

30.     Defendant James Reilly is sued in his official capacity as Clerk of Circuit Court for Harford County.  Acting in his official capacity, Mr. Reilly, as well as those acting under his direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Mr. Reilly's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Mr. Reilly resides and is employed in the State and District of Maryland.

31.     Defendant Wayne A. Robey is sued in his official capacity as Clerk of Circuit Court for Howard County.  Acting in his official capacity, Mr. Robey, as well as those acting under his direction and supervision, is directly involved with and responsible for the delays and

denials of access to newly filed complaints that CNS encounters.  Mr. Robey's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Mr. Robey resides and is employed in the State and District of Maryland.

32.     Defendant Sherise L. Kennard is sued in her official capacity as Clerk of Circuit Court for Kent County.  Acting in her official capacity, Ms. Kennard, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Kennard's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Kennard resides and is employed in the State and District of Maryland.

33.     Defendant Karen A. Bushell is sued in her official capacity as Clerk of Circuit Court for Montgomery County.  Acting in her official capacity, Ms. Bushell, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Bushell's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Bushell resides and is employed in the State and District of Maryland.

34.     Defendant Katherine B. Hager is sued in her official capacity as Clerk of Circuit Court for Queen Anne's County.  Acting in her official capacity, Ms. Hager, as well as those

acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Hager's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Hager resides and is employed in the State and District of Maryland.

35.    Defendant Charles Horner is sued in his official capacity as Clerk of Circuit Court for Somerset County.  Acting in his official capacity, Mr. Horner, as well as those acting under his direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Mr. Horner's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Mr. Horner resides and is employed in the State and District of Maryland.

36.    Defendant Debra J. Burch is sued in her official capacity as Clerk of Circuit Court for St. Mary's County.  Acting in her official capacity, Ms. Burch, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Burch's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Burch resides and is employed in the State and District of Maryland.

37.     Defendant Kathi Dulin Duvall is sued in her official capacity as Clerk of Circuit Court for Talbot County.  Acting in her official capacity, Ms. Duvall, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Duvall's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Duvall resides and is employed in the State and District of Maryland.

38.     Defendant Kevin Tucker is sued in his official capacity as Clerk of Circuit Court for Washington County.  Acting in his official capacity, Mr. Tucker, as well as those acting under his direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Mr. Tucker's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Mr. Tucker resides and is employed in the State and District of Maryland.

39.     Defendant James B. McAllister is sued in his official capacity as Clerk of Circuit Court for Wicomico County.  Acting in his official capacity, Mr. McAllister, as well as those acting under his direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Mr. McAllister's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States

Constitution and 42 U.S.C. § 1983.  On information and belief, Mr. McCallister resides and is employed in the State and District of Maryland.

40.     Defendant Susan Braniecki is sued in her official capacity as Clerk of Circuit Court for Worcester County.  Acting in her official capacity, Ms. Braniecki, as well as those acting under her direction and supervision, is directly involved with and responsible for the delays and denials of access to newly filed complaints that CNS encounters.  Ms. Braniecki's actions and the resulting delay and denial in access take place under color of Maryland law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  On information and belief, Ms. Braniecki resides and is employed in the State and District of Maryland.

41.     CNS seeks injunctive and declaratory relief against Defendants, who are named in their official capacities, as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

FACTUAL ALLEGATIONS

A.     <u>CNS' Publications And Subscribers</u>

42.     CNS is a nationwide news service, which began in 1990 out of a belief that news about civil litigation went unreported because the traditional news media failed to cover much of the important business of the courts.  CNS employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

43.     CNS currently employs reporters who cover the state and federal trial and appellate courts of Maryland, and who are supervised by CNS' Southeast Bureau Chief.

44.     CNS offers a variety of publications including its "New Litigation Reports," which contain original, staff-written summaries of significant new civil complaints.  New Litigation Reports focus on general jurisdiction civil complaints against business institutions, public entities, prominent individuals, or other civil actions of interest to CNS subscribers.  New Litigation Reports do not cover criminal or family law matters, nor do they include residential foreclosures or probate filings.

45.     Moreover, CNS does not seek to review or report on the small number of newly filed civil complaints that are statutorily confidential or accompanied by a motion to seal.

46.     CNS publishes two New Litigation Reports for courts in Maryland – the *Baltimore Report*, which includes coverage of the District of Maryland, Baltimore County Circuit Court and Baltimore City Circuit Court, and the *Greater Maryland Report*, which covers every other Maryland Circuit Court.

47.     Among CNS' other publications are its two print newsletters and an electronic "Daily Brief," which covers published, nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, as well as significant rulings from federal district courts, including the District of Maryland, as well as the United States Court of Appeals for the Fourth Circuit.

48.     In addition, CNS publishes a freely-available website featuring news reports and commentary, which is read by hundreds of thousands of readers each month.  The website functions much like a print daily newspaper, featuring staff-written articles about the news of the day from throughout the nation that are posted and rotate on and off the page on a 24-hour news cycle.

49.     To prepare New Litigation Reports and identify new cases that may warrant a website article, CNS reporters have traditionally visited their assigned courts, so that they can review all the complaints to determine which ones are newsworthy.  However, as the federal courts and an increasing number of state courts are making court records available online, CNS also covers courts remotely through the Internet.

50.     Given the nature of CNS' publications, any delay in the ability of a reporter to obtain and review newly filed complaints necessarily creates a delay in CNS' ability to inform subscribers and the public of the factual and legal allegations in those complaints.

B.     <u>A Tradition Of Access To Civil Complaints</u>

51.     For decades it has been a tradition for the press to review new civil complaints in courts across the country on the day of filing minutes after they crossed the intake counter and went through initial manual intake – where the clerk took the filer's check, noted the parties' names, spent a minute or less to look over the face page and signature page, stamped the complaint "filed," and handed the filer a receipt – but before docketing.

52.     After a new complaint was filed, it was set aside for press and public view in a bin or box near the intake window, where they waited to be gathered by a docketing clerk, usually the next day, to be entered into the court's case management system.  In Maryland, for example, the Circuit Court for Anne Arundel County provided such traditional access to paper filings within minutes of receipt.  This practice ensures that interested members of the public learn about new cases in a contemporaneous manner, while the news is still fresh.

53.     The complaint is the foundational cornerstone of all civil litigation.  It is the document by which the authority of a branch of government is invoked to publicly resolve what had previously been a private dispute.  It sets forth the factual and legal claims and the relief

sought.  When a complaint is received by a clerk for filing, the public – which funds the operation of the courts – is entitled to know who has invoked the jurisdiction and authority of the judicial branch and to what end.  When a new complaint is withheld, the public has no way of knowing that a new civil proceeding has been initiated.  Even if they find out about it, through docket information or directly from parties to the case, without access to the complaint itself, the public has no reliable and accurate way to ascertain the factual and legal claims in the new civil action.

54.     Access restrictions, for even a short time, make it less likely the complaints will be reported on by the press.  As a result, coverage of newsworthy cases is diminished.

55.     Since the adoption of electronic filing via MDEC in Defendants' courts, access delays have been pervasive.  Defendants withhold newly filed complaints while they sit in an electronic review queue until reviewed, docketed, and approved by court clerks.

C.     Delays In Access To Electronically Filed Civil Complaints In Maryland

56.     Beginning in the fall of 2014, the Maryland Judiciary transitioned to the MDEC system, consisting of a case management system called Odyssey with electronic filing capabilities.

57.     As part of the transition to MDEC, the Maryland Circuit Courts, on a county by county basis, have moved to mandatory electronic filing of new complaints via MDEC's e-filing portal, Odyssey File and Serve, which is provided by a third-party vendor named Tyler Technologies, Inc.

58.     As of October 25, 2021, 22 out of 24 of Maryland's Circuit Courts have implemented mandatory electronic filing through the MDEC system: Anne Arundel County commenced electronic filing on October 10, 2014; Caroline, Cecil, Kent, Queen Anne's, and

Talbot Counties commenced electronic filing on July 18, 2016; Dorchester, Somerset, Wicomico, and Worcester Counties commenced electronic filing on December 12, 2016; Calvert, Charles, and St. Mary's Counties commenced electronic filing on June 12, 2017; Allegany, Frederick, Garrett, and Washington Counties commenced electronic filing on October 16, 2017; Carroll, Harford, and Howard Counties commenced electronic filing on April 16, 2018; Baltimore County commenced electronic filing on February 19, 2019; and Montgomery County commenced electronic filing on October 25, 2021.

59.    Since the commencement of mandatory electronic filing in each of the Maryland Circuit Courts named herein, Defendants and all persons acting in concert or cooperation with them or at their direction or under their control have withheld access to newly filed civil complaints (and other e-filed records) until after they have been reviewed, docketed, and "accepted" by the Circuit Court clerks and their staff.

60.    On information and belief, Defendants and their staff withhold access until after clerical review and docketing as a result of their interpretation of Maryland Rule of Procedure 16-904(b), which states:

(b) Protection of Records

To protect judicial records and prevent unnecessary interference with the official business and duties of the custodian and other judicial personnel, a clerk is not required to permit public inspection of a case record filed with the clerk for docketing in a judicial action or a notice record filed for recording and indexing until the document has been docketed or recorded and indexed.

61.    Although the language of Maryland Rule of Procedure 16-904(b) might be interpreted to allow court staff to withhold access to new civil filings until that filing has been docketed, nothing in the Rule requires court staff to do so, nor does the First Amendment permit it to do so.  Docketing can occur after newly filed complaints are made available to the press and

public, and in the event that a filing error must be corrected, that error can be addressed thereafter, as is done in the vast majority of courts utilizing electronic filing.

62.     To the extent Defendants assert that they must conduct a pre-access review to ensure that newly filed complaints do not contain any confidential or sensitive information, in Maryland, as in virtually every other state, the filer is responsible for appropriately redacting any such information.  *See* Md. R. Elec. Filing & Case Mgmt. 20-201.1.  Indeed, in order to proceed with the filing of a newly filed complaint through the MDEC system, the filer must check a "submission agreement" box certifying that the filing does not contain any confidential information or, if it does, that the filer has provided a redacted version of the submission that excludes the restricted information from public view.  Thereafter, the filer has an opportunity to review the accuracy of all information entered and, if satisfied, clicks "submit" to successfully file the electronic filing with the court.  Upon submission, the document, whether a complaint or otherwise, is deemed filed by the court.  *See* Md. R. Elec. Filing & Case Mgmt. 20-202.

63.     Nonetheless, Defendants withhold access to newly filed non-confidential civil complaints until after they have been reviewed, docketed, and accepted by court staff into the MDEC system.  As a result, CNS, and other members of the press and public, experience inordinate delays in access.

64.     Even after a new complaint is accepted into the MDEC system, only individuals who are party to a case, and their counsel, may access documents filed in that case remotely through Odyssey on the MDEC system.  Those that are not party to a case, including the press and public, must travel to a courthouse on the MDEC system only during business hours to review new filings on public access terminals, even though complaints can be filed 24 hours per day every day of the week.

65.     Prior to commencing this action, CNS tracked and compiled data for new civil complaints electronically filed at each of the Maryland Circuit Courts named herein, noting delays between when each complaint was filed with the court and when the court first made each complaint available to the public at the courthouse.  CNS' tracking demonstrates that from October 11, 2021 through March 1, 2022, Defendants cumulatively have made on average 44.9% of newly filed complaints available to the press and public on the day of filing, with 30.4% withheld until the next day and 24.7% delayed for two days or more.

66.     Many of the Defendants have withheld an even greater percentage of newly filed civil complaints on the day of filing and for days thereafter.  For example, in Anne Arundel County, more than **73**% of newly filed civil complaints were withheld for at least one day; in Carroll County, more than **56**% were withheld for at least one day; in Charles County, more than **59**% were withheld for at least one day; in Montgomery County, more than **75**% were withheld for at least one day; in Washington County, more than **67**% were withheld for at least one day; and in Worcester County, more than **56**% were withheld for at least one day.  And on many days and during several weeks, Defendants have withheld a greater percentage of newly filed civil complaints than the average delays tracked by CNS.

67.     Defendants' policies and practices of denying access to complaints until after clerical review and docketing prevent CNS – and by extension its readers, including its subscribers – and other members of the press and public, from obtaining newly filed civil complaints in a contemporaneous manner as expeditiously as possible.

68.     The access delays in Defendants' courts, however, are easily avoidable. Electronic filing makes it easier for courts to provide contemporaneous access to newly filed complaints.  Basic intake work that was previously done by clerks at the intake counter is now

done by e-filing software, which filers use to enter case information and pay the required filing fee before submitting their electronic filings, including complaints, to the court.

69.     Based on the case information entered by the filer, electronic filing software automatically sorts and delivers newly filed complaints designated by the filer as non-confidential (while segregating confidential e-filings so they are not publicly available) into an electronic queue where the new filings wait for review and docketing by court staff, who first run through clerical tasks and then "accept" the filing to be migrated into the court's case management system.

70.     But in the vast majority of federal and many state courts which utilize electronic filing, unlike Maryland, new, non-confidential civil complaints flow automatically onto public access terminals and remotely online upon receipt, where they can be viewed by the public and press on the day of filing prior to clerk review, docketing, and acceptance.  Some courts provide access in this manner through e-filing systems developed by third-party vendors, like Tyler Technologies, Inc., while others provide it directly through their own home-grown and operated e-filing systems.

71.     State courts that currently provide access to newly filed complaints upon receipt include those in Alabama, Arizona, Connecticut, California, Georgia, Hawaii, New York, Nevada, Utah, Vermont, and Washington.  Among those state courts, many provide such access through means readily available to Defendants.

72.     In California, Georgia, and Nevada, for example, courts which use the same electronic filing and case management system as Defendants and their staff, based on software developed by Tyler Technologies, Inc., have provided contemporaneous access to CNS, and other credentialed members of the press, through a "Press Review Queue" feature that allows

CNS, at no cost to the court, to view newly filed complaints as soon as they are received by the court and without waiting for court staff to process them. And in Vermont, where the trial courts likewise use electronic filing software developed by Tyler Technologies, Inc., newly filed complaints now automatically flow onto the public docket upon their receipt for filing.

73.     Defendants thus have available to them a tested means for providing pre-processing, contemporaneous access to newly filed civil complaints upon receipt by the court – as it was with traditional press access to paper filings in courts across the nation – while busy clerks attend to their docketing tasks as their schedules allow. This is true notwithstanding the COVID-19 pandemic. Despite emergency orders and courthouse closures during the pandemic, many state and federal courts across the nation, unlike Maryland, have continued to provide on-receipt access to newly filed civil complaints with no disruption.

        D.     Pre-Litigation Efforts to Resolve Defendants' Unconstitutional Access Restrictions

74.     Prior to commencing this action, CNS made efforts to raise and address the issues giving rise to this Complaint in an attempt to resolve this matter without resorting to litigation. On October 1, 2021, CNS sent a letter to each of defendant Pamela Q. Harris and defendant Scott Poyer, proposing one constructive option for achieving contemporaneous access to non-confidential electronically filed civil complaints in Maryland, which, had it been adopted by Defendants, could have avoided the need for this action by resolving the delays caused by Defendants' "no access before processing" policies. A copy of CNS' October 1, 2021 letters are attached hereto as Exhibit 1.

75.     In response, on October 26, 2011, CNS received an e-mail from Terri Charles, Assistant Public Information Officer of the Administrative Office of the Courts of Maryland, rejecting CNS' proposal. A copy of Ms. Charles' email is attached hereto as Exhibit 2.

76.     Also, on February 14, 2022, CNS, through its counsel, sent a letter to Defendant Pamela Q. Harris, requesting that the State Court Administrator and her colleagues consider this matter and provide assurances that would ensure contemporaneous access to newly filed civil complaints upon receipt without the need for litigation.  A copy of CNS' February 14, 2022 letter, which enclosed a draft complaint, is attached hereto as <u>Exhibit 3</u> (without enclosures).

77.     In response, on March 4, 2022, CNS' counsel received a letter from the State Court Administrator's counsel, which, among other things, failed to provide or agree to provide contemporaneous access to newly filed civil complaints upon receipt.

E.     <u>Harm Caused By Defendants' Access Delays</u>

78.     Defendants' policies and practices of withholding access to newly filed civil complaints until after clerical review and docketing prevent CNS, as well as other members of the press, from informing the public about new court filings in Maryland's Circuit Courts while the news is still fresh.  Delays in access undermine the benefit of public scrutiny and may have the same result as complete suppression, as the newsworthiness of a new filing quickly declines with time, particularly in the digital age where there is a 24/7 news cycle.  Civil actions not reported on the day of filing are either not covered at all or receive less prominent coverage.  By the time the public has access to many newly filed complaints in Defendants' courts, the news is stale, the same as bread after one or two days.

79.     Moreover, news reports about complaints not yet available to the public are prone to inaccuracies.  There is no better way for the reader to learn about the factual allegations or legal claims without having access to the actual complaint.

80.     Thus, Defendants' conduct challenged in this action diminishes the ability of CNS and the rest of the media to report accurately and contemporaneously on the work of the courts.

Defendants' conduct also damages the openness, the fundamentally public nature of the courts, by impeding coverage of new filings.  Ultimately, the "no access before processing" policy, carried out despite the advent of electronic filing, takes the courts backwards on transparency in the course of moving forward on technology.  Technological progress should help shed light on the work of the courts rather than cast shade on the public institution.

81.     Accordingly, Defendants' policies and practices of withholding access to non-confidential electronically filed civil complaints until after clerical review and docketing, and the resulting denial of contemporaneous access to newly filed civil complaints, violates the First Amendment right of access to court records.  To the extent that the failure to provide contemporaneous access is the result of Defendants' reliance on Maryland Rule of Procedure 16-904(b), the manner in which that Rule is applied by Defendants and their staff similarly violates CNS' First Amendment right of access.

COUNT ONE
Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983

82.     CNS incorporates and repeats the allegations of Paragraph 1-81 herein.

83.     Defendants' actions under color of state law including, without limitation, their policies and practices of withholding newly filed civil complaints from press and public view until after clerical review and docketing, and their corresponding application of Maryland Rule of Procedure 16-904(b), that result in the denial of contemporaneous access to new civil complaints upon receipt for filing, deprive CNS, and by extension its subscribers, readers, members, and the public, of the right of access to judicial records secured by the First Amendment to the United States Constitution.

84.     There is no significant government interest sufficient to justify Defendants' unconstitutional actions resulting in the denial of contemporaneous access to newly filed civil

complaints under the First Amendment.  Even if a significant government interest did exist, there are far less restrictive means of protecting any such interest.  As such, Defendants' policies and practices, as well as their application of the Maryland Rules of Procedure in a manner that results in the denial of contemporaneous access to new civil complaints upon receipt for filing, are not narrowly tailored, as required by law.

85.     CNS has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm, including the diminution in value of CNS' reports and loss of goodwill, as a result of Defendants' violations of its First Amendment rights.  CNS is therefore entitled to declaratory and injunctive relief, both preliminary and permanent, to prevent further deprivation of the First Amendment rights guaranteed to CNS, its subscribers, members, and other readers.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, CNS seeks judgment against Defendants as follows:

a)     A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' policies and practices that knowingly effect delays in access to newly filed civil complaints, including without limitation, their policy and practice of denying access to complaints until after clerical review and docketing, as unconstitutional under the First and Fourteenth Amendments to the United States Constitution, for the reason that these policies and practices constitute an effective denial of contemporaneous access to public court records;

b)     A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' application of Maryland Rule of Procedure 16-904(b) in a

manner that knowingly denies access to newly filed civil complaints until after clerical review and docketing as unconstitutional under the First and Fourteenth Amendments to the United States Constitution, for the reason that the manner in which the Rule is applied constitutes an effective denial of contemporaneous access to public court records;

c)      A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices that deny CNS contemporaneous access to newly filed civil complaints, including, without limitation, their policy and practice of denying access to complaints until after clerical review and docketing, and requiring Defendants to provide contemporaneous access to newly filed civil complaints prior to clerical review and docketing;

d)      A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from applying Maryland Rule of Procedure 16-904(b) in a manner that denies CNS access to newly filed civil complaints until after clerical review and docketing, and requiring Defendants to provide contemporaneous access to newly filed civil complaints prior to clerical review and docketing;

e)     An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C.

§ 1988; and

f)     All other relief the Court deems just and proper.

Dated:        March 7, 2022

Respectfully Submitted,

_____
       **/s/**
John P. Lynch, Esq. (Bar No. 07433)
**McNamee Hosea, P.A.**
888 Bestgate Road, Suite 402
Annapolis, Maryland 21401
Telephone: (410) 266-9909
Facsimile: (410) 266-8425
Email: jlynch@mhlawyers.com

Jonathan E. Ginsberg, Esq.
(*to be admitted pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
Email: jon.ginsberg@bclplaw.com

*Counsel to Courthouse News Service*