IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COURTHOUSE NEWS SERVICE,

  *Plaintiff*,

  v.

PAMELA Q. HARRIS *et al.*,

  *Defendants*.

Civil Action No. ELH-22-548

## MEMORANDUM

This Memorandum concerns a motion for expedited discovery in connection with a First
Amendment case filed by plaintiff Courthouse News Service ("CNS") against Pamela Q. Harris,
the State Court Administrator of the Administrative Office of the Courts of Maryland.  ECF 1 (the
"Complaint").  In addition, CNS has sued the Clerk of almost every circuit court in the State of
Maryland.[1]  All defendants were sued in their official capacities.

On April 18, 2022, with the consent of defendants, plaintiff moved to amend its Complaint.
ECF 8.  I granted the Motion by Order dated April 18, 2022.  *See* ECF 10.  The Amended
Complaint is docketed at ECF 11.[2]

In its suit, CNS seeks, *inter alia*, a preliminary and permanent injunction enjoining
"Defendants, including their agents, assistants, successors, employees, and all persons acting in
concert or cooperation with them, or at their direction or under their control", from "continuing
their policies and practices that deny CNS contemporaneous access to newly filed civil complaints,

---

[1] The suit did not name as defendants the Clerk of the Circuit Court for Baltimore City or
the Clerk of the Circuit Court for Prince George's County.

[2] The Complaint is supported by three exhibits.  *See* ECF 1-2; ECF 1-3; ECF 1-4.
However, the exhibits were not resubmitted with the Amended Complaint.

including, without limitation, their policy and practice of denying access to complaints until after clerical review and docketing[.]"  ECF 11 at 30, 31.

On April 18, 2022, plaintiff moved for a preliminary injunction (ECF 9), supported by a memorandum of law (ECF 9-1) (collectively, the "PI Motion") and several exhibits.  In the PI Motion, CNS seeks to enjoin defendants from "withholding newly e-filed non-confidential civil complaints from press and public view until after clerical review and docketing" and to obtain "contemporaneous access to all such complaints upon their receipt for filing."  ECF 9-1 at 32.[3]  A hearing has been scheduled for October 19, 2022.  ECF 35.

Defendants filed a combined motion to dismiss the Amended Complaint and opposition to the PI Motion (ECF 23), supported by a memorandum of law (ECF 23-1) (collectively, "Defendants' Motion") and several exhibits.  Defendants' Motion includes several conclusions regarding the length in time between the filing of civil complaints and their disclosure to the public, as to the period of October 1, 2021, though May 24, 2022.  ECF 23-33. The raw data used to calculate the findings, *i.e.*, the date and time on which each complaint was filed and then made public ("Data"), was not included in the defendants' submission.  According to CNS, defendants have instead provided the conclusory findings of Jamie L. Walter, Ph.D., an employee of the Maryland judiciary.  CNS characterizes Walter's findings as an interpretation of the Data.  ECF 27 at 4.  Accordingly, CNS asked defendants to produce the Data.  But, defendants refused to do so.  *Id.* ¶ 12.

---

[3]  The PI Motion and the Amended Complaint essentially request the same relief. *Compare* ECF 9-1 and ECF 11.

Therefore, plaintiff subsequently filed an "Expedited Motion to Accelerate Discovery". ECF 27 (The "Motion").  CNS seeks limited discovery on an expedited basis.  *Id.* at 3.  Defendants oppose the Motion.  ECF 36 (the "Opposition").  CNS has replied.  ECF 40.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.      Factual Background

CNS is a news service that reports on civil litigation in state and federal courthouses across the country.  ECF 11, ¶ 16.  It offers a variety of publications, including its "New Litigation Reports," which contain summaries of new civil complaints that are described as significant.  *Id.* ¶ 44.  To compile the summaries, CNS reporters have traditionally visited their assigned courthouses near the end of each business day to review and report on the complaints filed that day.  *Id.* ¶ 49.  As the federal courts and an increasing number of state courts are making court records available online, CNS also covers courts remotely through the Internet.  *Id.*  According to CNS, new, non-confidential civil complaints in those courts typically flow automatically onto public access terminals and remotely online upon receipt, where they can be viewed by the public and press on the day of filing, prior to clerk review, docketing, and acceptance.  *Id.* ¶ 72.

On October 10, 2014, the Maryland Judiciary transitioned to the Maryland Electronic Courts ("MDEC") system.  *Id.* ¶ 56.  As part of the transition to MDEC, the Maryland Circuit Courts, on a county by county basis, have moved to mandatory electronic filing of new complaints via MDEC's e-filing portal, Odyssey File and Serve, which is provided by a third-party vendor named Tyler Technologies, Inc.  ("Tyler").  *Id.* ¶ 57.  To date, 22 out of 24 Maryland Circuit Courts mandate electronic filing through the MDEC system.  *Id.* ¶ 7.

CNS contends that the Clerks of the Circuit Court that use MDEC have withheld access to newly filed non-confidential civil complaints until after they have been reviewed, docketed, and accepted by court staff. *Id.* ¶ 63. In CNS's view, this has resulted in unconstitutional delays with regard to public access, in violation of the First Amendment. *Id.*

Prior to commencing this action, CNS tracked and compiled data for new civil complaints electronically filed at each of the 22 Maryland Circuit Courts that use the MDEC system, noting delays between when each complaint was filed with the court and when the court first made each complaint available to the public at the courthouse. ECF 11, ¶ 65. According to CNS, from October 11, 2021, through March 1, 2022, defendants cumulatively have made 44.9% of newly filed complaints available to the press and public on the day of filing, with 30.4% withheld until the next day and 24.7% delayed for two days or more. *Id.*

Jamie L. Walter, Ph.D. is the Director of the Research and Analysis section of the Administrative Office of the Courts. ECF 23-33 at 1. Based on his work, defendants characterize delays to newly filed civil complaints differently. ECF 23-33 at 1. In particular, defendants claim that between October 1, 2021, and May 24, 2022, Maryland's MDEC courts made newly submitted civil complaints accessible to the press and public, on average, within 3.9 business hours of submittal and, statewide, 85.2% of all newly submitted civil complaints were available to the press and public within 8 business hours and 1 business minute. *Id.* ¶ 17.

However, the Data used to calculate the defendants' findings was not provided to CNS by defendants. ECF 27, ¶ 9. Defendants acknowledge that Maryland's Administrative Office of the Courts "can and did monitor and track, with precision, the actual data at issue in this case by obtaining all the data directly from Tyler." ECF 23-33, ¶ 7. CNS requested the Data from defendants on March 17, 2022, and again on June 29, 2022. ECF 27, ¶ 12.

4

On June 30, 2022, defendants declined to provide the Data, stating: "In sum, Defendants will not voluntarily produce the raw data you request at this time because discovery has not begun." ECF 27, ¶ 13.  The Motion followed.  *Id.* at 6, 7.

## II.     Standard of Review

Notably, "[a] specific standard for evaluating expedited discovery requests is not set out in the Federal Rules of Civil Procedure nor has this Circuit or District established such a standard." *L'Occitane, Inc. v. Trans Source Logistics, Inc*., WMN-09-CV-2499, 2009 WL 3746690, at *2 (D. Md. Nov. 2, 2009).  But, "the Rules do provide the court with the authority to direct expedited discovery in limited circumstances."  *Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006) (citing *Dimension Data N. Am., Inc. v. Netstar-1, Inc.*, 226 F.R.D. 528, 530 (E.D.N.C. 2005)).

Rule 26 of the Federal Rules of Civil Procedure provides guidance.  Rule 26(b)(1) was amended in 2015, regarding the scope of discovery in civil cases, in an effort to curb widespread abuse of discovery.  *See generally Symposium*, *The Future of Discovery*, 71 VAND L. REV. (Nov. 2018).  The Rule provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case . . . .*" (Emphasis added).  The party seeking discovery has the burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted.  *Machinery Solutions, Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018); *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005).

Although Rule 26 does not define relevancy, it has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any

party.'" *Revak v. Miller*, 7:18-CV-206-FL, 2020 WL 1164920, at *2 (E.D.N.C. Mar. 9, 2020) (citation omitted); *see Fish v. Air & Liquid Sys. Corp.*, GLR-16-496, 2017 WL 697663, at *2 (D. Md. Feb. 21, 2017) (Copperthite, M.J.); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010). Nonetheless, a party is not entitled to limitless discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that "'discovery, like all matters of procedure, has ultimate and necessary boundaries'") (citation omitted).

Indeed, discovery "'must be measured against the yardstick of proportionality.'" *Fish*, 2017 WL 697663, at *3 (citation omitted); *see Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Pursuant to Rule 26(b)(2)(C), a court may limit discovery *sua sponte* or at a party's request for any one of three reasons: "the discovery sought is unreasonably cumulative or duplicative"; it is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; or "the burden or expense of the proposed discovery outweighs the likely benefit." *See Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("The simple fact that requested information is discoverable . . . does not mean that discovery must be had.").

Additionally, "Rule 26(d) permits courts to allow for discovery before the required Rule 26(f) conference." *Brightview Group, LP v. Teeters,* SAG-19-2774, 2019 WL 116600174, at *1 (D. Md. Nov. 6, 2019); *see also IOMAXIS, LLC v. Hurysch*, PJM-20-3612, 2022 WL 180734, at

*4 (D. Md. Jan. 20, 2022) (stating that a court may "exercise its discretion under Rule 26 [to] direct the parties to engage in discovery on an expedited basis" because "Plaintiff's requested discovery is tailored to obtain information relevant to a determination of whether Defendants should be enjoined").  And, "expedited discovery is particularly appropriate where a preliminary injunction is sought."  *L'Occitane*, 2009 WL 3746690, at *1 (citing *Ciena Corp v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000) and *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1220 (4th Cir. 1980)).  Under such circumstances, "'a standard based upon reasonableness or good cause, taking into account the totality of the circumstances,' is the most appropriate for evaluating Plaintiff's expedited discovery request."  *L'Occitane*, 2009 WL 3746690, at *2.

Notably, "district courts have 'broad discretion' with respect to scheduling the discovery process."  *Mullane v. Almon*, 339 F.R.D. 659, 662 (N.D. Fla. 2021) (citing *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion . . . to dictate the sequence of discovery.").  In determining whether good cause for expedited discovery has been demonstrated, "courts frequently consider" the following factors:

1.  whether a motion for preliminary injunction is pending;

2.  the breadth of the requested expedited discovery;

3.  the reasons the moving party is requesting expedited discovery;

4.  the burden on the opponent to comply with the request for expedited discovery;

5.  whether the information sought expeditiously could be obtained more efficiently from some other source;

6.  the extent to which the discovery process would be expedited; and

7.  whether a motion to dismiss for failure to state a claim is pending.

*Mullane*, 339 F.R.D. at 663 (citing *Let Them Play MN*, 517 F. Supp. 3d 870, 889 (D. Minn. 2021); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)).

### III.     Discussion

CNS requests the Data used in Defendants' Motion "regarding the purported average and median times. . . that elapsed between the time civil complaints were filed with the Defendant clerks' offices, and the time such filings were made available by Defendants to the public."  ECF 27, ¶ 8.  Defendants do not dispute that this Court may expedite discovery on the limited basis, requested by CNS.  ECF 36 at 10.  Nevertheless, defendants urge the Court to deny the Motion because (1) there is a pending motion to dismiss, (2) there is no connection between the requested discovery and the requested relief, (3) CNS is unlikely to succeed on the merits of its request for a preliminary injunction, and (4) denying expedited discovery preserves the status quo.  ECF 36 at 5.  I am not persuaded by defendants' arguments.

In regard to the first contention, defendants rely heavily on the fact that *Mullane*, 339 F.R.D. at 669, instructs that the existence of a pending motion to dismiss weighs against awarding expedited discovery.  However, *Mullane* did not involve a pending preliminary injunction motion.  And, "[t]he lack of a pending motion for a preliminary injunction greatly undercut[ ]" the need for "expedited discovery."  *Id*. at 664.

Morever, defendants ignore the other factors enunciated in *Mullane*, *i.e.*, "whether a motion for preliminary injunction is pending"; "the breadth of the requested expedited discovery"; "the reasons the moving party is requesting expedited discovery"; "the burden on the opponent to comply with the request for expedited discovery"; "whether the information sought expeditiously

could be obtained more efficiently from some other source"; and "the extent to which the discovery process would be expedited." These factors support granting expedited discovery here.

In particular, the *Mullane* Court said, *id.* at 663-64 (internal citations omitted):

> In assessing a motion for expedited discovery, courts first should consider whether there is a motion for a preliminary injunction . . . . Because of the expedited nature of injunctive proceedings, expedited discovery is more likely to be appropriate when a plaintiff is seeking a preliminary injunction . . . . In contrast, courts are less likely to find good cause for an expedited discovery process when the moving party has not moved for a temporary restraining order or preliminary injunction. *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531-32 (E.D.N.C. 2005).

Additionally, CNS's requested discovery is tailored to obtain only the Data used to reach the conclusions presented in Defendants' Motion. The information is clearly relevant, but it is unavailable to CNS from other sources. Moreover, providing the Data would not impose a substantial burden on defendants. To be sure, by defendants' own arguments, "[t]he underlying computer-generated data from which the actual data and calculations were obtained was provided directly from Tyler and, therefore, this actual data is undeniably the best evidence of the issue in this case." ECF 23-1, at 26. Thus, a complete reading of *Mullane* weighs in favor of granting the Motion.

Defendants also contend that the requested Data is immaterial to the relief sought by CNS. ECF 36 at 18. Specifically, defendants argue that "if the only relief CNS seeks is for this Court to ban Maryland courts from any review and docketing of newly submitted civil complaints for filing prior to making them accessible to the public, then the length of time it takes the clerks to do that review and docketing becomes irrelevant." ECF 36 at 19. But, CNS simply asserts that where a First Amendment right of access applies, any delays in access to new complaints must be justified by application of constitutional scrutiny consistent with the Supreme Court's analysis in *Press-Enterprise Co. v. Superior Court of California for Riverside Cnty.*, 478 U.S. 1, 8-10 (1986)

("*Press-Enterprise II*"); *see also*, *e.g.*, *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021); *Courthouse News Serv. v. Gabel*, 2:21-cv-000132, 2021 WL 5416650, at *14 (D. Vt. Nov. 19, 2021).  The Data at issue here is pertinent to address defendants' statistical conclusions and arguments in connection therewith.

The defendants' argument that expedited discovery should be denied because CNS is unlikely to succeed in its PI motion is similarly unavailing.  As noted, granting a motion to expedite discovery does not require this Court to determine if CNS is likely to succeed on the merits. Instead, discovery requests "must be 'narrowly tailored to obtain information relevant to a preliminary injunction determination.'"  *Brightview Group,* 2019 WL 116600174, at *1 (quoting *L'Occitane, Inc.*, 2009 WL 3746690, at *2).  Based on that standard, Judge Gallagher granted expedited discovery to the extent it was "a necessary aspect of [plaintiff's] presentation at the Preliminary Injunction hearing."  *Brightview Group*, 2019 WL 116600174, at *2.

Here, defendants have opposed the PI Motion by providing statistical conclusions about delays in access to newly filed civil complaints without providing CNS with the Data used to reach those conclusions.  CNS is entitled to review the Data that underlies the defendants' position.

Finally, defendants claim that the Motion should be denied because "CNS has not demonstrated that it requires expedited discovery to preserve the status quo."  ECF 36 at 23. However, this is not the relevant standard.  As explained in *Brightview Group*, 2019 WL 116600174, at *1: "Courts in this District have adopted a reasonableness standard in reviewing expedited discovery requests, determining whether the request is supported by good cause, considering the totality of the circumstances."

**IV.     Conclusion**

I am persuaded that CNS has met its burden and demonstrated adequate justification for

limited expedited discovery.  For the reasons set forth above, I shall grant the Motion.

An Order follows, consistent with this Memorandum.


Date: August 18, 2022                                             _____/s/_____
                                                                                        Ellen L. Hollander
                                                                                        United States District Judge